JOHN C. LYMAN & others, Executors, *vs.* ITHAMAR CONKEY.

A surety in a bond given by a guardian, on his appointment, for the faithful discharge of his trust, is not liable thereon for a breach of the guardian's duty in respect to the sale of the ward's real estate, and the application of the proceeds of the sale, when such sale is made pursuant to a license under the statute of 1783, *c.* 32, § 5, upon the ground that it will be for the ward's benefit that the estate should be sold, and the proceeds be put at interest.

Where a surety in such bond was appointed judge of probate, and in that capacity decreed an allowance of the guardian's general account, in which the guardian charged himself with the proceeds of the ward's real estate ; it was held, in a suit on the bond against such surety, that he was not precluded, by his decree, from showing, in defence, that the said charge was in fact for the proceeds of real estate sold by the guardian under a license to sell it, and an order to put the proceeds at interest, for the benefit of the ward.

Before the revised statutes went into operation, a judge of probate had no authority to license a guardian to sell the real estate of a ward for his benefit, in order to put the proceeds at interest. [But see *St.* 1830, *c.* 45.]

No guardians, besides those of minors, can now be, (or ever could be,) lawfully authorized to sell their wards' estate, and place the proceeds at interest, without the previous written consent of the overseers of the poor of the town in which the wards reside.

DEBT on a bond given in 1825 to the late judge of probate for the county of Hampshire, by Asahel Thayer, as principal, and the defendant as surety, on the appointment of said Thayer as guardian of Dolly Baggs, a person *non compos mentis.* One of the conditions of the bond was, that said Thayer should render a just and true account of his guardianship, and should pay and deliver, or return, so much of his ward's estate as should be found remaining upon his account after examination and allowance . thereof by the judge of probate. A breach of the latter clause of this condition was assigned in the declaration.

The judge of probate, to whom the bond was given, resigned his office, and the defendant was appointed his successor, before this action was commenced ; and it was therefore brought, pursuant to the statute of 1838, *c.* 184, in the name of the former, and, upon his decease while it was pending, was prosecuted by his executors.

The parties agreed to the following facts, subject to all objections to the competency or sufficiency of any portion of them as evidence :

27 *

Said Asahel Thayer was appointed guardian as above mentioned, in August, 1825, and gave bond, in the usual form, and with the condition (among others) above set forth ; and the defendant was one of the sureties on said bond : In 1833, said Thayer presented a petition to the judge of probate for leave to sell and convey certain real estate of his said ward, for her benefit : Upon this petition, the judge of probate, after notice to all persons interested, licensed and empowered said Thayer to sell and convey said real estate, " first giving public notice, &c. and giving bonds, as the law requires," and ordered " that the proceeds of said sale be put at interest and secured by mortgage on other real estate, for the benefit of said ward : " Said Thayer gave bond, with sureties, conformably to said order : In November, 1837, he rendered his account of said guardianship to the defendant, who was then judge of probate, and the defendant accepted and allowed the same : In that account, said Thayer, after charging himself with various items, to the amount of $1,053·92, also charged himself thus, — " Farm sold by order of court, and possession given April 1st, 1834, — $2,200." This item in the account was the product of the sale of said real estate, pursuant to the aforesaid license. Upon the allowance of said account, the defendant removed said Thayer from his said guardianship, and appointed Park Warner to be guardian of said Dolly. Said Warner immediately demanded of said Thayer the balance of his account, and afterwards received of him a part thereof only.

Judgment to be rendered for the plaintiffs, for the balance of said Thayer's account, and interest thereon, if the defendant is liable for the proceeds of the sale of said real estate ; otherwise, the plaintiffs to be nonsuit.

*Forbes,* for the plaintiffs.

*Wells* and *Dickinson,* for the defendant.

Shaw, C. J. The defendant being himself judge of probate, and successor of the late judge of probate, Hon. Samuel Hinckley, the suit was brought in the name of the latter, to whom the bond was given, pursuant to *St.* 1838, c. 184, for the use and benefit of the party interested ; and the plaintiff having

died pending the suit, the executors have now come in and been admitted as plaintiffs.

The action is brought against the defendant as surety on a probate bond given 2d August, 1825, by Asahel Thayer, on his appointment to be guardian of Dolly Baggs, a person *non compos.* It appears that in 1833 the guardian petitioned the judge of probate for a license to sell the real estate of said Dolly Baggs, upon a representation that it would be for the interest of said ward, that such real estate should be sold, and the proceeds put at interest and well secured for her benefit. Upon this representation, a license was granted by the probate court, and said Thayer was authorized to sell such real estate, first giving notice, &c., and giving bonds as the law directs ; and it was thereby ordered that the proceeds of said sale be put at interest and secured by mortgage on other real estate, for the benefit of said ward.

It does not appear that the order to put out said sum on interest, secured by mortgage, was ever complied with ; but it appears, that in 1837, after the appointment of the defendant as judge of probate, the guardian rendered his first and only account, in which he charged himself with $ 2,200 as the proceeds of real estate sold, and it is agreed that that sum constituted the proceeds of the sale, under the above mentioned license. He has also charged himself with interest on said sum. But it appears by the said account, that independently of said charge of $ 2,200, the guardian has accounted for all the effects of the ward which came to his hands, including the interest on the proceeds of the real estate ; but if the defendant, as surety on the original guardianship bond, is responsible for the whole of the assets, including the proceeds of the real estate thus sold, then there is a considerable balance on the guardianship account, which the guardian has neglected to pay over or account for, on demand, and for which the defendant, as surety, is liable.

Two questions arise in this case ; first, whether the defendant, as surety on the original guardianship bond, was liable for the misconduct of the guardian, in the sale of the real estate under

such license, or the misapplication of the proceeds ; secondly, whether he is precluded from showing the facts, as they existed, by allowing the guardian's general account, in his capacity as judge of probate, in which the guardian charged himself with those proceeds.

1. The conditions of probate bonds are regulated by the various statutes requiring them. It is to be presumed that the bonds required were actually given in this case ; and therefore we may safely look to the statutes to ascertain the obligations which they have imposed.

The statute under which Thayer, the guardian, was appointed, was that of 1783, *c*. 38. The 2d section provides for the appointment of a guardian to a person *non compos*, directing and empowering such guardian to take care of the person and estate, both real and personal, of such person ; to make a true and perfect inventory of the said estate, &c. Section 4th authorizes the guardian to improve the estate of the ward, to apply the income and profits, to manage, improve, and divide real estate ; he is required to pay debts out of the ward's personal estate, or, in case that be insufficient, then out of the real estate, upon obtaining license therefor, and also may sell real estate for the ward's support and maintenance, under a similar license, if the income is not sufficient. Section 5th provides that such guardians shall give bond for the faithful discharge of the trust reposed in them, and more especially for rendering a just and true account of their guardianship, when required. Various other duties are prescribed, and powers conferred on guardians, by the statutes ; but it is nowhere specified as amongst the general duties of guardians, to convert the real estate of their wards into personal, for their general benefit ; nor have they any authority to sell real estate, even under a license for the purpose, except for the payment of debts, and for the necessary support of the ward, of which necessity and propriety the court granting the authority is to judge. The license is to be limited to that purpose ; and a sufficient amount of the real estate may be sold to accomplish it, and no more.

Upon a sale for these purposes, no separate bond is required

of the guardian, and of course the effect of the license is to convert a sufficient portion of the real estate into personal, to be placed in the hands of the guardian as assets, to meet the actual and present wants of the ward. Such assets, when thus received, go into the general guardianship account, and they are to be appropriated and accounted for, like the other assets of the estate, under the general duty of the guardian ; and of course, for any breach of duty in the guardian, in respect to the conduct of such sale, and the application of the proceeds, the guardian and his sureties are liable on their bond. *St.* 1783, *c.* 38, § 4.

But two other cases are provided for, where under special circumstances, guardians may be authorized to sell real estate, the proceeds of which are not necessary for the payment of the debts of wards, or for their support and maintenance : First, where the estate consists of one messuage or tenement, so situated that a sale of part would greatly injure the whole. *St.* 1783, *c.* 32, § 2 : Secondly, where it would be greatly for the benefit of the ward, that the real estate should be changed into personal, and the proceeds invested for his benefit. *St.* 1783, *c.* 32, § 5. But in both these cases, the authority is regarded as a special trust, superadded to that of guardian, and which indeed may be conferred on a person other than the guardian, the result of which will be to place a sum of money in the hands of the guardian, for special purposes, independently of the guardianship, to be separately accounted for, and to go, in some cases, differently from the general assets ; and in both cases, such guardian is bound, as a condition precedent to the valid execution of the power, to give bond, with sureties, to observe the rules of law in the sale, and to invest and account for the proceeds, according to law. Various modifications of these provisions have been made from time to time. *Sts.* 1806, *c.* 102 : 1818, *c.* 112 : 1826, *c.* 64 : 1830, *c.* 140 : 1834, *c* 174, § 7. But none of these acts effectually alter this marked and distinguishing feature in the system. Whenever the object is to dispose of the real estate of the ward, to raise a fund to stand in lieu of the real estate, for the future use of the ward, or of any other person who would have been entitled to the real

estate, it is deemed a separate special trust, for the due execution of which a separate security is required, as a condition precedent to the validity of the sale ; and therefore the court are of opinion, that the accounting for the proceeds of a sale, made under such special license to sell for the benefit of the ward, is not one of the general duties of guardianship, for the performance of which the sureties on the original guardianship bond are responsible.

2. The second question is, whether it is competent for the defendant to take this ground, after the guardian has rendered his guardianship account, in which he has charged himself with $2,200, as the proceeds of the sale of the real estate, without specifying under what species of license the sale was made, and after the defendant himself, acting as judge of probate, has allowed and passed that account.

The court are of opinion that he is not precluded from showing the truth of the case. It is undoubtedly in general true, that the responsibility of the guardian for particular items and for the settlement of the whole estate, is a question of probate jurisdiction ; and this court, on a probate bond, will not reëxamine and restate the probate guardianship account. But when a probate account, settled and allowed, is offered as evidence of certain facts, the question whether they prove the facts, is very different from that of the conclusiveness of the facts when proved. The guardian puts down amongst the sums, for which he charges himself, " Farm sold by order of court, $2,200." If this sale had been made under a license for payment of debts, it was rightfully a charge in his general account : If made under a special license, for changing real estate into personal, he was still bound to render his account to the judge of probate, and to charge himself ; but not in his general account. It would be a special account, for which another set of sureties, under another bond, were liable. But on the face of the account, it is left entirely ambiguous, whether it was sold under the one or the other of these species of license. This being a latent ambiguity, it was competent to go into evidence *aliunde* to explain it, and the moment this evidence is let in, it is shown beyond doubt, that

this was a sale made for the general benefit of the ward, for the proceeds of which the guardian was separately liable, and for securing which separate liability he had given another bond. The decision in this case contradicts nothing contained in the probate account ; it may be, and no doubt is true, that the guardian had sold the real estate of his ward, under a license of court, and that he was accountable for the proceeds ; but it is quite consistent with that admission, that it was a sale for which neither the guardian nor his sureties were liable under this bond.

And the same consideration applies to the estoppel urged against the defendant, in consequence of his having allowed the said account, in his character of judge of probate, if indeed he had jurisdiction of the subject, of which there is great doubt. Rev. Sts. c. 83, § 15.   The judge would be estopped only as far as the account, acted upon by him, stated explicitly the fact upon which he now offers proof.   It does not appear on the face of the account, whether the item of charge, $ 2,200, was the proceeds of the sale of real estate, made under a special license for the benefit of the ward, and to be put out on interest, or whether it was sold under a license for the payment of debts. Nor is he estopped by the fact of the accounting for these proceeds, because, in either case, the guardian was bound to account, and to account with the judge of probate.   The fact of accounting was consistent with either hypothesis.   It was left wholly ambiguous on the account, and it was a latent ambiguity.   We think, therefore, that as all estoppels are to be construed strictly, the defendant was not estopped by the mere fact, that this item was inserted in the general account.   Whether it was properly chargeable in that account depends, not upon the place where it is found, but upon the terms in which it is expressed, and the facts thereby stated, which determine the nature of the liability. Suppose the item had expressly been a credit to the ward, for $ 2,200, the proceeds of land sold under a special license, describing t in detail, and upon the obtaining of which, a separate bond was given.   As it would then appear upon the face of the account, that it was a sum, for which the sureties on the general

bond were not liable, the fact that it was included in the same schedule with items for which they were liable, would not render them liable for it. We think the entry, as it stands, involving a latent ambiguity, and therefore capable of explanation, when explained by showing the truth of the fact, has the same legal effect upon the responsibility of those respectively who are collaterally liable on their respective bonds for the different duties of the guardian.

This case has been argued on both sides, as if it were beyond doubt that the sale made by the guardian, in 1833, was valid; and perhaps it could not be properly drawn in question in this suit. But lest it might be supposed that the court intended to sanction such an opinion, and because it has been stated in behalf of the ward, that if she cannot maintain this suit, she is without remedy, the sureties on the other bond being insolvent, it may be proper to suggest at least a doubt whether the validity of that sale can be supported. First, because, until the revised statutes went into operation, in 1836, after the license in question, the judge of probate had no authority to grant license to a guardian to sell real estate, for the benefit of the ward, in order to put out the proceeds on interest; and secondly, because both before and under the revised statutes, the court were not authorized to grant license to a guardian to sell the estate of a ward, other than a minor, to place the proceeds out at interest, without the previous consent and approbation in writing, of the overseers of the poor of the town where such ward shall reside. *Sts.* 1818, *c.* 112: 1830, *c.* 140, § 1. Rev. Sts. *c.* 72, § 8. Unless there was some statute in force in 1833, which we have overlooked, it would seem that the sale in question would be void upon both grounds. Perhaps there may have been a written approbation of the overseers of the poor, though it does not appear amongst the proceedings, which would obviate that difficulty. The question, however, whether the sale is valid, is not before the court, and they give no opinion upon it; and these remarks are added merely to avoid any misconstruction upon that point. [ But see *St.* 1830, *c.* 45.]

*Plaintiffs nonsuit*